# United States Court of Appeals
## For the First Circuit

No. 16-2132

PUERTO RICO TELEPHONE COMPANY, INC.,

Plaintiff, Appellant,

v.

SAN JUAN CABLE LLC,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. John A. Woodcock, Jr.,* U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

Patrick J. Pascarella, Jr., with whom Benjamin C. Sassé and Tucker Ellis LLP were on brief, for appellant.
Jacob (Yaakov) M. Roth, with whom Brinton Lucas, Thomas Demitrack, Brian K. Grube, Jones Day, Orlando Fernandez, and Orlando Fernandez Law Offices were on brief, for appellee.

October 31, 2017

---

* Of the District of Maine, sitting by designation.

**KAYATTA**, **Circuit Judge**.  Puerto Rico Telephone Company, Inc., (PRTC) sought permission from the Puerto Rico Telecommunications Regulatory Board (TRB) to offer internet protocol television service to the residents of Puerto Rico.  At the time, San Juan Cable LLC, doing business as "OneLink," provided cable television service to residents of several municipalities in Puerto Rico, including San Juan.  Not eager to face competition, OneLink petitioned the TRB and other government officials and tribunals, including Commonwealth and federal courts, to deny, slow down, or otherwise impede PRTC's efforts.  After eventually obtaining the needed permission from the TRB, PRTC filed this antitrust action claiming that OneLink's interference with PRTC's permitting efforts constituted unlawful monopolization and attempted monopolization in violation of both the Sherman Act, 15 U.S.C. § 2, and the Puerto Rico Anti-Monopoly Act, P.R. Laws Ann. tit. 10, §§ 257–276.  Granting summary judgment to OneLink, the district court concluded that OneLink's actions were immunized from suit under the Noerr-Pennington doctrine, which conditionally protects the right to petition the government.  See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc. (Noerr), 365 U.S. 127 (1961); United Mine Workers of Am. v. Pennington (Pennington), 381 U.S. 657 (1965).  In so ruling, the district court rejected PRTC's argument that the facts could support a finding that OneLink abused its right to petition and could be

- 2 -

found liable under the so-called "sham" exception to the Noerr-Pennington immunity. See Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 511-12 (1972) (extending both Noerr-Pennington immunity and the sham exception to petitioning of courts and administrative agencies). For the following reasons, we agree with the district court that the facts in this case could not subject OneLink to liability under the sham exception.

**I.**

**A.**

The parties' disagreement on appeal begins with OneLink's win-loss record in its multi-tribunal petitioning activity aimed at impeding PRTC's efforts to secure permission to compete against OneLink. A detailed description of OneLink's filings with the TRB, the Puerto Rico courts, and the federal courts, its communications with Puerto Rico officials and federal officials, and the resolutions of those filings and communications can be found in the district court's two published opinions. See P.R. Tel. Co. v. San Juan Cable Co. (PRTC I), 196 F. Supp. 3d 207, 215-24 (D.P.R. 2016); P.R. Tel. Co. v. San Juan Cable Co. (PRTC II), 196 F. Supp. 3d 248, 253-98 (D.P.R. 2016). PRTC claims that those filings and communications collectively constituted twenty-four "petitions" in the form of requests that a court or other government tribunal, agency, or official take action adverse to PRTC's license application, and that OneLink failed to prevail

on any of those petitions.  OneLink avoids taking a firm position on its win-loss record apart from suggesting that the district court's count (four wins out of thirteen petitions) was closer to the mark.

The parties' divergent counts flow from disagreements about whether to treat motions filed in the course of a single proceeding as separate petitions, and whether to rank an interlocutory procedural win as a loss if the proceeding ultimately resulted in a decision against OneLink.  Thus, for example, the district court counted OneLink's request to intervene in the second franchise proceeding before the TRB along with several other motions filed in connection with that request as a single petition, see PRTC II, 196 F. Supp. 3d at 324, 337, while PRTC argues that each motion filed with the TRB constitutes a separate petition.  Likewise, the district court counted as a win the issuance of an order to show cause why a temporary restraining order should not issue by a federal district court in a suit that was ultimately dismissed as moot, see id. at 279-80, 325, 338, while PRTC argues that merely securing a show cause order is not a win.

For our purposes, we need not resolve these disputes concerning OneLink's win-loss record.  Rather, we can assume, as PRTC argues, that OneLink's various filings can be viewed as twenty-four separate petitions, and that none resulted in a meaningful victory.  We must also assume, though, that all twenty-

- 4 -

four filings were "objectively reasonable" in the sense that a "reasonable litigant could realistically expect success on the merits." Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc. (PREI), 508 U.S. 49, 60 (1993). We make this latter assumption because the district court so found after examining each of OneLink's various filings, see PRTC II, 196 F. Supp. 3d at 325-35, and PRTC has waived any challenge to those findings. PRTC did not make any such challenge in its main brief on appeal. See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015) ("[W]e do not consider arguments for reversing a decision of a district court when the argument is not raised in a party's opening brief."); see also Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 60 n.17 (1st Cir. 1999) ("We have repeatedly held that arguments raised only in a footnote or in a perfunctory manner are waived."). It also failed to make any case for excusing the waiver in its reply brief[1] or at oral argument. Indeed, the entire oral argument proceeded on the assumption that the district court's findings that all the petitions were objectively reasonable would stand. Although we can excuse waiver of this sort in certain cases, this is not such a case. Assessing the merits of OneLink's petitions requires detailed analyses of a large

---

[1] Although the reply brief contains arguments in two footnotes that some of the petitions were not objectively reasonable, it does not make any effort to explain why this court should excuse PRTC's failure to make these arguments in its opening brief.

number of different filings.  We decline to undertake those analyses without briefing.[2]

**B.**

PRTC's waiver of any argument that some of OneLink's numerous filings were baseless creates an immediate obstacle to PRTC's ability to maintain this lawsuit.  The general rule is that a defendant cannot be held liable under the Sherman Act for petitioning the government, including by filing a lawsuit.  See Cal. Motor Transp., 404 U.S. 510–13.  PRTC relies on an important exception to that rule, known as the "sham" exception.  See id. (citing, inter alia, Noerr, 365 U.S. at 144).  In PREI, however, the Supreme Court held that a lawsuit, even when employed as an anticompetitive weapon, could only fall within the sham exception if the suit was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  508 U.S. at 60–61.  We assume, as do the parties, that PREI also applies to a petition filed before an administrative agency or another executive official.  See 508 U.S. at 59–60 ("We dispelled [in Columbia v. Omni Outdoor Advertising, Inc., 499 U.S.

---

[2] As indicated above, PRTC does argue that the district court erred in finding that OneLink actually prevailed on four petitions. PRTC also claims that the district court neglected to assess one petition filed by a third party because it erroneously deemed the petition not to have been funded by PRTC.  PRTC does not, however, argue in its main brief that any of those five petitions were actually baseless in the sense of lacking any reasonably realistic prospect of success.

365 (1991)] the notion that an antitrust plaintiff could prove a sham merely by showing that its competitor's purposes were to delay [the plaintiff's] entry into the market and even to deny it a meaningful access to the appropriate . . . administrative and legislative fora.")(internal quotation marks omitted, brackets and ellipsis in original). Given PRTC's failure to argue that any one of OneLink's petitions was objectively baseless, it is clear that no single petition could support the imposition of antitrust liability on OneLink. Accordingly, PRTC must predicate its appeal on the contention that the serial nature of OneLink's petitioning materially distinguishes this case from PREI; that is to say, a jury could find OneLink liable for launching a fusillade of ultimately unsuccessful petitions even if no one petition was sufficiently baseless to fit within the "sham" exception under PREI. We therefore turn next to that contention.

## C.

In pursuit of its effort to distinguish PREI, PRTC tries to find company in the decisions of several other circuits that have construed California Motor Transport and PREI as compatibly establishing different tests depending on whether more than one petition is challenged as abusive. In brief, this argument first restricts PREI's "objectively baseless" requirement to cases involving a single petition rather than a series of petitions. To assess a series of petitions, the argument relies instead on

language in California Motor Transport describing as outside the scope of Noerr-Pennington immunity the "institut[ion of] proceedings and actions . . . with or without probable cause, and regardless of the merits of the cases," 404 U.S. at 512. As construed by PRTC, this argument also reads "with or without probable cause" and "regardless of the merits," id., as including both petitions brought "with . . . probable cause" and with "merit[]" where the defendant's decision to file the series of petitions paid no heed to whether they had merit. So framed, the argument views PREI very much through the lens of Justice Stevens's concurrence. See PREI, 508 U.S. at 73 (Stevens, J., concurring in the judgment) ("Repetitive filings, some of which are successful and some unsuccessful, may support an inference that the process is being misused. In such a case, a rule that a single meritorious action can never constitute a sham cannot be dispositive." (citing Cal. Motor Transp., 404 U.S. 508)).

The circuit court opinions to which PRTC points--that is to say opinions of the four circuits to have addressed similar arguments directly--all in one way or another adopt some variant of this view of the respective applicability of PREI and California Motor Transport. See Hanover 3201 Realty LLC v. Vill. Supermarkets, Inc., 806 F.3d 162, 179-81 (3d Cir. 2015), cert. denied, 136 S. Ct. 2451 (2016); Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27, 728 F.3d 354, 363-64

- 8 -

(4th Cir. 2013) (doing so in the context of the Noerr-Pennington doctrine as applied to an unfair labor practices claim); Primetime 24 Joint Venture v. Nat'l Broad. Co., 219 F.3d 92, 100-01 (2d Cir. 2000); USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO (USS-POSCO), 31 F.3d 800, 810 (9th Cir. 1994) (concluding that PREI and California Motor Transport "appl[y] to different situations").

We find ourselves quite skeptical of the notion that a defendant's willingness to file frivolous cases may render it liable for filing a series of only objectively reasonable cases. Although presented with a record involving the filing of only one lawsuit, the court in PREI wrote nothing to suggest that its ruling would have been different had the defendant filed a series of objectively reasonable suits. Rather, the Court addressed the more categorical question "whether litigation may be a sham merely because a subjective expectation of success does not motivate the litigant," and ruled that "an objectively reasonable effort to litigate cannot be a sham regardless of subjective intent." 508 U.S. at 57. Similarly, in describing California Motor Transport, PREI trained its attention not on the difference between a single suit and a series of suits, but rather on the difference between "objectively reasonable claims" and "a pattern of baseless,

- 9 -

repetitive claims." Id. at 58.[3] Nor is there any pragmatic reason to presume that PREI's protections for nonfrivolous petitioning activity disappear merely because the defendant exercises its right to engage in such activity on multiple occasions. One large lawsuit or intervention in an agency proceeding can impose much more of a burden on a competitor than might a series of smaller claims. Also, where a party files a large number of petitions-- here twenty-four according to PRTC--and every single one is objectively reasonable, we struggle to see how a jury could reasonably conclude that the party was filing petitions "regardless of the merits of the cases." Cal. Motor Transp., 404 U.S. at 512. To the contrary, the larger the sample size provided by the accumulating petitions, none of which are objectively baseless, the more likely it is that the serial litigant must have exercised a fair amount of discretion in eschewing frivolous claims. Cf. USS-POSCO, 31 F.3d at 811 ("The fact that more than half of all the actions as to which we know the results turn out to have merit cannot be reconciled with the charge that the unions were filing lawsuits and other actions willy-nilly without regard to success."). And while some circuits treat less skeptically

---

[3] California Motor Transport does at the same time remain independently relevant to misconduct, such as fraud, bribery or threats, in connection with the filing of claims, baseless or not. 404 U.S. at 512-13. See also id. at 518 (Stewart, J., concurring) (chronicling threats).

- 10 -

than do we the notion that PREI does not apply fully to the filing of a series of suits, none of those circuits have ever sustained a finding of liability while simultaneously determining that no frivolous petitions were filed.

Of course the absence of any outright victory in so many forays similarly makes it quite clear that the likelihood of prevailing was not paramount in OneLink's calculus when deciding whether to petition. But the task here is to identify sham litigation, not probable winners. And while we can see the logic inherent in reasoning that a nonfrivolous suit might be viewed differently when flown in a flock of frivolous suits, we see little logic in concluding that an exercise of the right to file an objectively reasonable petition loses its protection merely because it is accompanied by other exercises of that right.

This is not a case in which it could reasonably be said that the petitioning activity provided no reasonable prospect of a benefit to OneLink apart from inflicting costs on PRTC. See PREI, 508 U.S. at 68-69 (Stevens, J., concurring in the judgment) ("The label 'sham' . . . . might also apply to a plaintiff who had some reason to expect success on the merits but because of its tremendous cost would not bother to achieve that result without the benefit of collateral injuries imposed on its competitor by the legal process alone."). Rather, had OneLink received the relief for which it petitioned, it would have received the benefits

- 11 -

of lawfully delaying or restricting the entry of a competitor into its market.  Nor is this a case in which a monopolist deterred competition by threatening to file suits without regard to their merit, as in California Motor Transport.  We therefore need not decide how we would rule in either of those sorts of cases.

## II.

For the foregoing reasons, we affirm the district court's orders granting summary judgment in favor of OneLink.[4]

**-Concurring Opinions Follows-**

---

[4] PRTC does not dispute that Noerr-Pennington immunity applies to the claim under the Puerto Rico Anti-Monopoly Act.  It has also not argued that the district court should have remanded the Puerto Rico claims instead of granting summary judgment on those claims along with the federal claims.  We also need not consider PRTC's argument that the district court erred in its finding on causation in the first summary judgment decision. Our holding accepts that Noerr-Pennington immunity applied to each petition because of its objective reasonableness, not because of its causal role.

**BARRON, Circuit Judge, with whom TORRUELLA, Circuit Judge, joins, concurring.** The parties ask us to decide -- one way or the other -- whether a monopolist may be held liable under antitrust law for filing a series of petitions against a competitor (whether in a court or in an administrative proceeding) when no single one of those filings is baseless.[5] An unequivocal "no" would close off the so-called "sham" exception to Noerr-Pennington immunity in such a case. And, in doing so, such an answer would afford litigious monopolists a potentially significant safe harbor from antitrust liability. In particular, it would protect even a monopolist that used a barrage of filings to make an upstart's own attempt to petition for an operating license so costly that the upstart must give up its attempt to compete for market share.

But, in affirming the grant of summary judgment in the defendant's favor, we do not establish such a limit on the scope of the sham exception. We avoid doing so because we do not hold that the "objectively baseless" requirement for triggering the sham exception set forth in the single-petition case of Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60 (1993), necessarily applies to

---

[5] The case concerns an alleged monopoly violation under both the Sherman Act, 15 U.S.C. § 2, and the Puerto Rico Anti-Monopoly Act, P.R. Laws Ann. tit. 10, § 260. Puerto Rico's anti-monopolization provision corresponds with that of the Sherman Act, and the parties have not suggested that the provisions are interpreted differently.

each and every case involving a pattern of petitioning. We instead rely on a more record-based, case-specific line of reasoning that, as I read our opinion, leaves open the possibility that, PREI notwithstanding, a monopolist might be liable under the antitrust laws for engaging in a pattern of petitioning, even though no single filing in that pattern is objectively baseless. I agree with this prudent approach. I write separately, however, to say more about the particular type of pattern petitioning case to which I have alluded, for it is not expressly mentioned in our opinion and bears some resemblance to the case at hand.

## I.

The Sherman Act seeks to "preserv[e] free and unfettered competition as the rule of trade." N. Pac. Ry. Co. v. United States, 356 U.S. 1, 4 (1958). To further that aim, Congress used broad terms in the Act "in order to prevent creative monopolists from escaping liability by adopting ever new forms of combinations or anticompetitive conduct." 2 Julian O. von Kalinowski et al., Antitrust Laws and Trade Regulation § 25.01 (2d ed. 2017).

In response, the federal courts have adopted a "common-law approach" in construing the limits that the antitrust laws place on the efforts of market incumbents to leverage their power to unfairly restrict competition. Leegin Creative Leather Products, Inc. v. PSKS, Inc., 551 U.S. 877, 899 (2007). Courts thus generally analyze restraint-of-trade claims according to the

"rule of reason," which in operation is hardly a rule at all, and instead requires the "finder of fact [to] decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors." State Oil Co. v. Khan, 522 U.S. 3, 10 (1997). And, likewise, courts apply what amounts to a quite similar "'common law' against monopolizing." Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263, 272 (2d Cir. 1979).

At the same time, market participants, including monopolists, enjoy a broad right to petition their government under the First Amendment. See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 138 (1961). This right protects not only lobbying the legislature but also litigating in court and participating in administrative proceedings. See California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

Recognizing that courts "cannot . . . lightly impute to Congress an intent to invade these freedoms," Noerr, 365 U.S. at 138, the Supreme Court established the Noerr-Pennington doctrine. See United Mine Workers of America v. Pennington, 381 U.S. 657, 669 (1965); Noerr, 365 U.S. at 136. That doctrine generally makes petitioning activity immune from antitrust liability, subject, however, to the important exception that immunity is not available to petitioning activity that is just a "sham" for impermissible anti-competitive conduct. Noerr, 365 U.S. at 144.

- 15 -

Courts thus necessarily confront the following difficulty in defining the scope of the sham exception. A decision to immunize monopolists from antitrust liability for their filings -- by narrowly construing the exception's scope -- surely protects the First Amendment right of petition. But, such a decision also may provide unnecessarily broad protection and thereby unduly impede the "free and unfettered competition" that Congress wished to foster when it broadly empowered courts to hold monopolists accountable for their anti-competitive schemes. N. Pac. Ry. Co., 356 U.S. at 4.

To navigate this difficulty, it is important not to view the sham exception as a rigid rule. Rather, we should construe that exception -- just as we construe the antitrust laws generally -- in accord with a rule of reason. I am therefore reluctant to conclude that the "objectively baseless" requirement set forth in PREI, which involved a single filing in a particular context, necessarily governs every type of case involving the filing of a series of petitions.

Heightened antitrust concerns might arise in particular pattern cases that would warrant an approach that is more sensitive to circumstance, so as to provide greater protection of competition from monopolistic schemes. Nor is it clear to me that such a common-law like approach to defining shams would invariably trench on First Amendment rights. After all, the tort of abuse of process

- 16 -

is itself sensitive to circumstance, but, presumably, the First Amendment is not infringed just because the tort imposes liability on some suits that have some merit. See, e.g., Poduska v. Ward, 895 F.2d 854, 857 (1st Cir. 1990); Restatement (Second) of Torts § 682 cmt. a (Am. Law Inst. 1977).

I also am not convinced that precedent forecloses this more context-sensitive approach to pattern cases. I note that PREI concerned an attempt to apply the sham exception to the filing of a single copyright infringement suit, 508 U.S. at 52, and thus did not directly address whether a pattern of filings outside that context might raise distinct concerns. And while the Court did speak broadly in setting forth the "objectively baseless" requirement in that case, id. at 60-66, three concurring Justices did not appear to read that decision to set forth a holding that imposed the baseless requirement to pattern cases. See id. at 66 (Souter, J., concurring); Id. at 67 (Stevens, J., concurring).

Nor have we or any other circuit held that PREI automatically imposes its "objectively baseless" requirement in each and every pattern case. In fact, the four circuits to have addressed the issue generally apply a "holistic" analysis that broadly considers a variety of factors in pattern cases to determine whether what is claimed to have been the exercise of the right of petition was really just a sham for concealing anti-competitive conduct. See Hanover 3201 Realty, LLC v. Vill.

- 17 -

Supermarkets, Inc., 806 F.3d 162, 180-81 (3d Cir. 2015); Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27, 728 F.3d 354, 363-64 (4th Cir. 2013); see also Primetime 24 Joint Venture v. Nat'l Broad. Co., 219 F.3d 92, 101 (2d Cir. 2000); USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO, 31 F.3d 800, 810-11 (9th Cir. 1994).

Finally, PREI did not purport to overrule California Motor, which rejected the dismissal of an antitrust complaint that challenged a pattern of petitioning as a sham without alleging that any of the defendants' underlying filings was baseless. The Court held that the case could proceed to trial, 404 U.S. at 516, even though the complaint alleged merely that the defendants had publicly announced and then implemented a policy of opposing "with or without probable cause, and regardless of the merits" any of the plaintiffs' applications for licenses that the plaintiffs needed in order to enter the market at all. Id. at 512.

## II.

Assuming, then, that PREI's "objectively baseless" requirement does not necessarily control the outcome of this case, there is still the question whether PRTC has provided enough evidence of sham petitioning to survive OneLink's motion for summary judgment. PRTC's case does not much resemble either type of pattern case involving only non-baseless filings that our opinion expressly identifies as ones that might survive PREI. See

- 18 -

Ct. Op. at 11-12. But, PRTC does contend that its allegations are close enough to those involved in California Motor to warrant application of the sham exception, and that argument merits further consideration.

PRTC's case is not on all fours with California Motor in that PRTC does not allege that OneLink made a public threat to make baseless filings like the antitrust defendant in California Motor allegedly did. But, I am not convinced that the scope of the sham exception described in California Motor is necessarily limited by the fact that the complaint in that case alleged such a public threat.

In California Motor, the complaint alleged that certain incumbent trucking companies had set up a trust fund to finance opposition to their would-be competitors' applications for truck operating rights, informed their would-be competitors that they intended to oppose "every application" "with or without probable cause and regardless of the merits," and then made a slew of adverse filings, seemingly in accord with that threat. 404 U.S. at 518 (Stewart, J., concurring). Faced with that alleged abuse of the governmental process, California Motor reasoned that the right of petition under the First Amendment does not extend to the use of that right to deprive would-be competitors of their own right of petition to secure a right to enter the market and thereby take on the monopolist. Id. at 513-15 (majority opinion).

- 19 -

The Court drew that fairly uncontroversial proposition from Associated Press v. United States, 326 U.S. 1 (1945), which held that the Associated Press's exclusive membership policies could still incur antitrust liability because the freedom to publish protected by the First Amendment does not extend to a "freedom to combine to keep others from publishing." California Motor, 404 U.S. at 514 (quoting Associated Press, 326 U.S. at 20). And, it is not clear to me that the Court, in relying on that logic, was suggesting that a campaign of harassing litigation aimed at destroying a would-be market entrant's effort to petition for a license to operate -- by making it too costly to pursue -- is any less a sham just because no public threat of baseless filings is made.

Nor is it clear to me that PREI requires that we limit California Motor's reach to cases involving such threats. After all, PREI did not involve an attempt by an incumbent market actor to destroy a rival's right to petition for a license to compete for a share of the incumbent's market. Rather, in PREI, various movie studios filed a copyright infringement action against hotel operators who rented videodiscs of the studios' movies to hotel guests and sought to develop a market for the viewing of the videos at other hotels. 508 U.S. at 51-52. The hotel operators then counterclaimed that the studios' suit was a sham because that claim for copyright protection, even though potentially meritorious,

"cloaked" the studios' effort to monopolize and restrain trade in video entertainment services at hotels.  Id. at 52.

PREI thus did not face an alleged clash of petition rights remotely like in California Motor.  PREI confronted only the stark contention that challenged petitioning activity is a sham for anticompetitive conduct if one market participant petitions to secure its legal right in order to maintain an economic advantage over a competitor (in that case by vindicating the right not to have its intellectual property infringed) by filing a non-frivolous suit.  In PREI, the Court quite understandably reasoned that an anti-competitive motive in seeking legal relief is not in and of itself enough to make the request for relief an abuse of the right of petition.  Id. at 59.  Such reasoning flows quite naturally from the logic underlying Noerr-Pennington immunity, which protects the First Amendment rights of all market actors to seek competitive advantage through the non-frivolous assertion of legal rights that, if vindicated, would prove to be economically beneficial.

Thus, in my view, PREI does not necessarily compel the conclusion that, in a pattern case more akin to California Motor, each filing in a series must be baseless to make the petitioning activity a sham.  The antitrust violation -- if it exists -- in a pattern case of that kind inheres in the monopolist's use of the petitioning process to make the costs of the rival's petitioning

- 21 -

activity so high that the rival cannot secure the legal relief that would enable it actually to become a competitor. And, for that reason, there is no claim in such a case, as there was in PREI, that the antitrust violation inheres merely in the monopolist's desire to disadvantage the competitor by actually winning legal relief. Simply put, while there is no question after PREI that a monopolist may use its petitioning right to seek to win, I have my doubts about whether PREI also means that a monopolist may use that same right to ensure -- by seeking to deprive a rival of its own petitioning right -- that the monopolist cannot lose.

Of course, in the abstract, I suppose that a monopolist could use even a single filing in this concerning manner. And, I acknowledge that PREI's "objectively baseless" requirement would bar holding the monopolist liable for that filing, if it is not frivolous. But, even so, California Motor suggests that, for a monopolist to be effective in this regard, it will need to file multiple petitions, as opposed to a single one. Thus, the fact that PREI imposed an "objectively baseless" requirement in a case involving a single copyright infringement claim does not suggest to me that this same requirement necessarily applies to the kind of seemingly abusive serial filing that I have just described.

Here, however, PRTC does not have the kind of direct evidence of OneLink's attempt to destroy PRTC's right to petition

for a license to compete that the California Motor plaintiffs had in consequence of the public threat that the incumbent trucking companies had allegedly made. Nor does PRTC identify other comparable evidence.

Instead, PRTC relies on circumstantial evidence from which, PRTC alleges, a jury could permissibly infer that OneLink filed its underlying petitions without regard to merit. PRTC points to OneLink's poor win-loss record in the underlying proceedings and the fact that (in PRTC's estimation) the relief sought was, in any event, unlikely to be of much benefit. But, PRTC concedes that each filing had some merit, and it is difficult to deny the value of the legal relief sought where, as is alleged here, a market incumbent seeks procedural rights to challenge a putative competitor's application for an operating license and injunctive relief against that would-be competitor's construction and funding of rival services.

The only other evidence that PRTC asks us to consider is that OneLink abandoned its "efforts to intervene and challenge PRTC's license" once its adversary obtained the license, the licensing board's observations concerning OneLink's litigiousness, and the possibility that OneLink financed half of another market incumbent's lawsuit seeking to enjoin PRTC from developing the infrastructure to enter their market. But, no circuit has actually permitted a suit to go forward in which the underlying petitions

- 23 -

were not baseless and there was no clear and convincing evidence that an alleged monopolist sought to "use the governmental process. . . as an anticompetitive weapon." City of Columbia v. Omni Outdoor Advert., Inc., 499 U.S. 365, 380 (1991). And for good reason, given the First Amendment interests at stake. Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-56 (1986) ("[W]here the New York Times 'clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant."); New York Times Co. v. Sullivan, 376 U.S. 254, 285-86 (1964) (establishing a clear-and-convincing standard of proof for a public official's libel claim, in light of the defendant's First Amendment rights).

For these reasons, I am convinced that if we were to let this suit proceed, we would be tilting the balance too far against OneLink's right of petition. Accordingly, I join the Court's opinion, which affirms the District Court's grant of summary judgment but reserves for future cases a fuller accounting of whether and when a series of non-baseless petitions might constitute a sham within the meaning of the Noerr-Pennington doctrine.